UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Michal Roseberry,

     Plaintiff,

v.

Condor Hospitality Limited
Partnership,

     Defendant.

CIVIL ACTION FILE

NO. 1:26-cv-00467-SEG

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT
CONDOR HOSPITALITY LIMITED PARTNERSHIP'S MOTION TO
DISMISS PLAINTIFF'S PUBLIC NUISANCE CLAIM AND
BRIEF IN SUPPORT**

**INTRODUCTION**

Defendant Condor Hospitality Limited Partnership operated the Savannah Suites as an open marketplace for sex trafficking, prostitution, and drug activity. For years, hundreds of sex buyers, traffickers, and drug dealers cycled through the property daily. At any given time, at least ten women were being sold for sex in guest rooms, on balconies, and in the parking lot. Women appeared throughout the hotel's common areas bearing visible signs of abuse: bruises, split lips, and chunks of hair torn from their scalps. Defendant deliberately placed trafficking victims on the backside of the property to conceal their exploitation and protect their traffickers from detection. Hotel employees knew traffickers by name, directed sex buyers to vic-

tims' rooms, sold drugs on the premises and stood by while traffickers physically abused their victims. Defendant maintained a policy of not calling law enforcement.

The constant flow of buyers, dealers, and traffickers in and out of the property spilled into the surrounding neighborhood—drug dealers and women being sold for sex congregated outside around the clock, large groups gathered outside the hotel for hours, and guests were robbed at gunpoint simply by stepping outside. Online reviews documented these conditions for more than a decade.

Defendant now asks this Court to dismiss Plaintiff's public nuisance claim on the ground that the Complaint fails to adequately plead one. The argument is meritless, and it fails for at least two reasons.

*First*, Defendant never addresses one of the two theories pleaded. The Complaint alleges that the Savannah Suites constituted a public nuisance *per se* under Georgia law because Defendant knowingly maintained a place for prostitution and other sexually related offenses. Georgia has recognized for more than a century that such an establishment is a *per se* public nuisance. *Brindle v. Copeland*, 145 Ga. 398, 89 S.E. 332 (Ga. 1916). Federal courts in this District have repeatedly applied that principle in hotel sex trafficking cases.[1] Defendant ignores that claim entirely yet

---

[1] *E.g., B.W. v. G6 Hospitality Prop. LLC*, No. 1:24-cv-195, 2025 WL 3557926, at *7–8 (N.D. Ga. Feb 11, 2025); *Roseberry*, 815 F. Supp. 3d at 1335-37; *I.R.*, 723 F. Supp. 3d at 1345–46; *E.M.*, 2024 WL 4005218, at *5–8; *D.H.*, 689 F. Supp. 3d at 1311.

seeks wholesale dismissal of Plaintiff's public nuisance claim. The Motion should be denied on that basis alone.

*Second*, even setting public nuisance *per se* aside, the Complaint states a claim for public nuisance under Georgia law. This was not a hotel that incidentally hosted criminal activity. The Complaint alleges years of open trafficking, prostitution, drug activity, violence, and hotel employees who facilitated rather than prevented the crimes occurring on the property. It further alleges that those conditions attracted hundreds of buyers of sex and drugs (*i.e.,* criminals), endangered ordinary members of the public, and produced an appreciable blighting effect on the surrounding community. At the pleading stage, those detailed factual allegations more than plausibly state a claim for public nuisance. Defendant's disagreement with the inferences arising from those allegations is not a basis for dismissal under Rule 12(b)(6).

## STATEMENT OF FACTS

Defendant Condor Hospitality Limited Partnership owned and operated the Savannah Suites hotel at 140 Pine Street NE, Atlanta, Georgia. [Doc. 1 ¶¶ 1, 2, 5, and 29]. For years before, during, and after Plaintiff's trafficking, the Savannah Suites operated as an open marketplace for commercial sex trafficking, prostitution, and drug dealing—conditions Defendant knew about and chose to permit. [Doc. 1 ¶¶ 6–7, 28, 31–32].

3

For approximately six weeks in February and March 2016, Plaintiff was illegally harbored, falsely imprisoned, and sold for sex at the Savannah Suites. [Doc. 1 ¶ 9]. Her traffickers brought her there specifically because they knew the hotel would be a good place to sell her for sex. *Id.* Defendant placed her on the backside of the property—intentionally positioning trafficking victims out of public view to conceal their operation and minimize the risk of detection. [Doc. 1 ¶ 10].

Plaintiff was forced to have sex with approximately 10 to 15 men each day. [Doc. 1 ¶ 11]. She was trafficked alongside three to four other victims, all of whom were also being sold for sex, and her traffickers rented multiple rooms at Savannah Suites to accommodate the number of victims they were exploiting. [Doc. 1 ¶ 12]. Combined, Plaintiff and the other victims were sold to approximately 40 to 75 sex buyers per day at Defendant's hotel; her traffickers also sold drugs out of the hotel, generating additional foot traffic. [Doc. 1 ¶ 13]. Plaintiff and the other victims showed visible signs of abuse—bruises, split lips, and chunks of hair torn from their scalps—and appeared throughout the hotel in skimpy clothing to attract buyers. [Doc. 1 ¶ 14]. They were noticeably under their traffickers' control, denied access to phones, money, and identification, and walked around the hotel with their heads down. [Doc. 1 ¶ 15]. On multiple occasions, Plaintiff's trafficker threatened to throw her off a hotel balcony while she stood outside in cold weather wearing almost noth-

4

ing—in full view of anyone nearby—and no one intervened or called the police. [Doc. 1 ¶ 16].

Hotel employees were not merely aware of the trafficking—they actively facilitated it. Employees referred to Plaintiff's traffickers by their street names, exchanged fist bumps and high fives with them around the property, and directed buyers of sex to Plaintiff's room when asked where "Phoenix" (the name under which Plaintiff was sold for sex) was. [Doc. 1 ¶¶ 17–18]. A maintenance employee sold drugs to Plaintiff's traffickers and was a constant presence in their room, witnessing her trafficker pin her against the wall and threaten her, and selling drugs to buyers purchasing Plaintiff for sex. [Doc. 1 ¶¶ 19–21]. Used condoms, boxes of condoms, lubricant, drug needles, and other paraphernalia were in plain view throughout. [Doc. 1 ¶ 22]. Defendant maintained a policy of not calling the police regarding known or suspected sex trafficking at the hotel. [Doc. 1 ¶ 24].

Plaintiff's trafficking was not an isolated occurrence. On average, at least 10 other girls were being sold for sex at the Savannah Suites or in its parking lot at any given time, each controlled by a pimp. [Doc. 1 ¶ 25]. The hotel accommodated more than 100 sex buyers each day. [Doc. 1 ¶ 26]. The back of the hotel had constant activity, with buyers coming and going from multiple rooms after short stays. [Doc. 1 ¶ 30]. Prostitution and sex trafficking were rampant and obvious to employees and guests alike before, during, and after Michal's trafficking. [Doc. 1 ¶ 31]. Defendant

5

provided, for a fee, the market and the rooms that made this possible—that is precisely why traffickers brought Plaintiff there. [Doc. 1 ¶¶ 32, 52].

Defendant had actual or constructive knowledge of publicly available online reviews dating back to 2005 documenting open drug dealing visible from hotel rooms, drug dealers and prostitutes standing out front all night, and approximately 70 people of questionable character gathered outside on a single visit. [Doc. 1 ¶¶ 33–34]. Guests described being robbed at gunpoint on the property, hearing eight gunshots at 3:00 a.m., and finding it unsafe to walk even three blocks from the hotel. *Id.* Despite this knowledge, Defendant failed to implement any reasonable security measures, policies, or training to identify, deter, or reduce the criminal activity at the hotel. [Doc. 1 ¶¶ 36–41].

## LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To withstand a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). But "intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable

inference that the defendant is liable for the conduct alleged. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570)

At the motion to dismiss stage, "'all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff.'" *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006)). However, this principle does not apply to legal conclusions set forth in the complaint. *Iqbal*, 556 U.S. at 678.

## ARGUMENT

**I.    Plaintiff's Complaint states a claim for public nuisance plausible on its face.**

    **A.    Plaintiff sufficiently alleges a *per se* public nuisance—a theory of liability Defendant's Motion wholly ignores.**

Defendant's operation of the Savannah Suites constituted a public nuisance. "To establish a nuisance claim, a plaintiff must allege 'the existence of the nuisance complained of, that he or she has suffered injury, and that the injury complained of was caused by the alleged nuisance.'" *D.H. v. Tucker Inn Inc.*, 689 F. Supp. 3d 1304, 1311 (N.D. Ga. 2023) (quoting *Bord v. Hillman*, 335 Ga. App. 18, 21, 780 S.E.2d 725 (2015)). Georgia defines a nuisance broadly as "anything that causes hurt, inconvenience, or damage to another." O.C.G.A. § 41-1-1. A public nuisance is one that "damages all persons who come within the sphere of its operation, though it

may vary in its effects on individuals." O.C.G.A. § 41-1-2. An individual who suffers special damage from a public nuisance may recover for those injuries. O.C.G.A. § 41-1-3. A personal injury to life and health is always of a different kind of damage than that experienced by the public sufficient to meet the requirement of special or extraordinary damage for maintaining a private action for public nuisance. *Savannah, F. & W. Ry. Co. v. Parish*, 117 Ga. 893, 896, 45 S.E. 280 (1903).

Georgia law has long recognized that a "lewd house" constitutes a *per se* public nuisance. *See Brindle*, 145 Ga. 398 at 398 (1916). That principle applies even where lawful lodging occurs alongside unlawful conduct. In *Fitzgerald*, the court upheld a conviction for maintaining a lewd house even though the establishment operated as a restaurant and lodging house, lawful guests stayed there, and the proprietor was not shown to have actual knowledge of a single act of prostitution proved at trial. *Fitzgerald v. State*, 10 Ga. App. 70, 70, 72 S.E. 541 (1911). The relevant inquiry was not whether the premises had legitimate uses, but whether it operated as a lewd house, even once. *Id.*

Plaintiff's allegations are sufficient to plausibly state a claim that Defendant's hotel was a *per se* public nuisance. It alleges the Savannah Suites operated for years as a well-known center of commercial sex trafficking, prostitution, drug activity, and violence. [Doc. 1 ¶¶ 6–7, 25, 28, 31, 33–34]. According to the Complaint, Defendant's employees repeatedly observed obvious indicators of trafficking, knew the

8

property was a hub for sex trafficking, were aware of numerous trafficking victims before, during, and after Plaintiff's exploitation, observed or ignored criminal activity commonly associated with trafficking, and disregarded guest complaints, online reviews, and public reports documenting those conditions. [Doc. 1 ¶¶ 6, 17–26, 33–37].

These allegations are more than sufficient to establish a *per se* public nuisance under Georgia law. Georgia courts recognize a public nuisance where there is "a continuous or regularly repetitive act or condition which causes the hurt, inconvenience or injury." *Barnes v. St. Stephen's Missionary Baptist Church*, 260 Ga. App. 765, 769, 580 S.E.2d 587 (2003) (quoting *Ingram v. Baldwin County*, 149 Ga. App. 422, 423, 254 S.E.2d 429 (1979)). The Complaint alleges precisely that: a years-long pattern of illegal sex trafficking, prostitution, drug activity, and related crime at the Savannah Suites that existed before, during, and after Michal's trafficking there. [Doc. 1 ¶¶ 6–7, 25, 28, 31, 33–34].

These allegations are similar to, or exceed, those repeatedly held sufficient to state a claim for *per se* public nuisance in hotel sex trafficking cases in this District. *E.g.*, *B.W.*, 2025 WL 3557926, at *7–8 (N.D. Ga. Feb 11, 2025); *Roseberry v. Studio 6 Delk Rd., LLC*, 815 F. Supp. 3d 1325, 1335-37 (N.D. Ga. 2024); *I.R. v. I Shri Khodiyar, LLC*, 723 F. Supp. 3d 1327, 1345–46 (N.D. Ga. 2024); *E.M. v. Tucker Inn*

*Inc*, No. 1:24-cv-00195, 2024 WL 4005218, at *5–8 (N.D. Ga. July 15, 2024); *D.H.*, 689 F. Supp. 3d at 1311. The same result is warranted here.

B.      **The Complaint pleads sufficient facts to establish that the Savannah Suites constituted a public nuisance.**

Georgia law defines a public nuisance as one "which damages all persons who come within the sphere of its operation, though it may vary in its effects on individuals." O.C.G.A. § 41-1-2. The Georgia Supreme Court has long held that "[t]his language is not used in the sense that every person in the area must have been actually hurt or injured in order to show a public nuisance." *City of Douglasville v. Queen*, 270 Ga. 770, 774, 514 S.E.2d 195, 199 (1999). Rather, "[i]t is sufficient if it injures those of the public who may actually come in contact with it," or if "the act complained of affects rights which are common to all within a particular area." *Id.*; *see also Atlanta Processing Co. v. Brown*, 227 Ga. 203, 211, 179 S.E.2d 752 (1971) (rejecting injury to "every person in the area" as "an unreasonable construction of the statute").

Plaintiff alleges that the "crime, sex trafficking, and prostitution at the Savannah Suites" constituted a public nuisance that damaged all persons who came within "its sphere of operation." [Doc. 1 ¶¶ 70−71]. And the Complaint alleges facts demonstrating exactly that. The hotel functioned as an open marketplace for commercial sex trafficking, prostitution, and drug dealing, with more than one hundred sex buyers, drug dealers, drug buyers, and traffickers moving through the property each day.

[Doc. 1 ¶¶ 9, 25−26, 28, 31, 33−34]. At least ten trafficking victims were being sold for sex at the hotel at any given time. [Doc. 1 ¶¶ 12, 25]. The criminal activity spilled out of the hotel's rooms and occurred openly in the common areas. Trafficking victims appeared throughout the hotel in skimpy clothing showing visible signs of abuse, including bruises, split lips, and chunks of hair torn from their scalps. [Doc. 1 ¶ 14]. Traffickers made scenes throughout the property to assert control over their victims. [Doc. 1 ¶ 15−16].

The harm extended well beyond trafficking victims. The Complaint documents guest reviewers were also injured by coming within the nuisance's sphere of operation. One guest heard eight gunshots at 3:00 a.m. and described "throngs of people outside screaming all night long," then found it unsafe to walk even three blocks to a nearby hospital the following morning. [Doc. 1 ¶ 33]. Another was robbed at gunpoint on a Wednesday afternoon while walking back from a nearby restaurant. *Id.* Still others describe being accosted by prostitutes and drug dealers simply by stepping outside their rooms. *Id.* These are factual allegations of actual harm to actual people who came within the nuisance's sphere of operation—not conclusions.

Plaintiff further alleges the nuisance harmed the public more generally, *i.e.*, the Savannah Suites's "history of rampant crime and illegal sex activity created a spill-over effect that led to other crime occurring in the surrounding area," attracted

"persons of questionable character," had a "tendency to breed crime and debauch the morals of the community," and produced an appreciable "blighting effect on the surrounding community." [Doc. 1 ¶¶ 70−72]. The Complaint's factual allegations bear this out: more than one hundred sex buyers, drug dealers, drug buyers, and traffickers cycled through the property daily—criminal actors drawn from and returning to the surrounding community. [Doc. 1 ¶¶ 25−26, 31, 33−34]. Trafficking victims were sold for sex not just inside the hotel but in the parking lot as well, with pimps controlling victims openly on the property's exterior. [Doc. 1 ¶ 25]. The back of the hotel had constant activity, with sex buyers coming and going from multiple rooms after short stays. [Doc. 1 ¶ 30]. That constant flow of criminal actors in and out of the property is precisely the mechanism by which the nuisance spread into the surrounding area. The guest reviews in ¶ 33 document the result: open drug dealing visible from hotel rooms, drug dealers and prostitutes standing in front all night, approximately 70 people of questionable character gathered outside during a single visit, and throngs of people outside screaming all night long. [Doc. 1 ¶ 33]. These allegations more than adequately plead an appreciable blighting effect on the surrounding community. *See, e.g., City of Coll. Park v. 2600 Camp Creek, LLC*, 293 Ga. App. 207, 209, 666 S.E.2d 607 (2008) ("[s]ignificant interference with the public health, the public safety, the public peace, the public comfort or the public convenience may support a finding of public nuisance" (internal citations omitted)); *Mo-*

12

*reland v. Cheney*, 267 Ga. 469, 469 S.E.2d 745 (1997) (holding nightclub a public nuisance based on pervasive drug dealing and gunfights in and around the premises).

The Georgia Court of Appeals' decisions in *Doe v. St. Joseph's Catholic Church*, 357 Ga. App. 710, 850 S.E.2d 267 (2020), and *McArthur v. Beech Haven Baptist Church*, 361 Ga. App. 877, 864 S.E.2d 189 (2021), likewise do not support dismissal. Those cases involved years of secret sexual abuse concealed from the public for years. *St. Joseph's*, 357 Ga. App. at 710−12, 716−17. The Court of Appeals held that those allegations did not constitute a public nuisance because secret abuse between a priest and his victims produces no outward effects on the surrounding community. *St. Joseph's*, 357 Ga. App. at 717.

Critically, however, the *St. Joseph's* court distinguished those allegations from establishments producing the type of public harm associated with "a gambling establishment or unlicensed liquor store." *Id.* That distinction is dispositive here. Plaintiff alleges that the Savannah Suites openly operated as a commercial marketplace for sex trafficking and prostitution. [Doc. 1 ¶¶ 7, 25–26, 28, 31–32]. The Complaint alleges that solicitation and violence occurred in parking lots, balconies, and common areas; more than one hundred sex buyers visited the property each day; hotel employees directed buyers to victims and sold drugs on the premises; Defendant maintained a policy of not calling law enforcement when crime, including sex trafficking, was occurring on its property; and ordinary travelers documented the

13

property's rampant criminal activity in online reviews spanning more than a decade. [Doc. 1 ¶¶ 14, 16, 18−19, 24−26, 33]. Those allegations describe precisely the type of openly operating criminal enterprises affecting the surrounding community that *St. Joseph's* distinguished from concealed private misconduct.

The Complaint likewise alleges that Defendant's operation of the Savannah Suites generated the community-wide harms required for a public nuisance. It alleges that the hotel attracted hundreds of sex buyers, traffickers, and drug dealers; fostered open trafficking, prostitution, drug activity, and violence; and, through Defendant's policies and employees, sustained those conditions for years, producing a spillover of crime and an appreciable blighting effect on the surrounding community. [Doc. 1 ¶¶ 7, 13–14, 25–26, 28, 31–33, 36–37, 70–72]. Taken as true, these allegations more than plausibly state a claim that Defendant's operation of the Savannah Suites created and maintained a public nuisance.

Further, Defendant's argument that buyers of sex and drugs were uninjured visitors who defeat the public nuisance claim fundamentally misunderstands the doctrine.[2] The fact that buyers of sex and drugs willingly came to the property does not

---

[2] Defendant's contention that *some* Savannah Suites patrons were unharmed by the rampant criminality is at odds with Plaintiff's allegations and thus not properly considered. *See FindWhat Inv'r Grp.*, 658 F.3d at 1296. But even if this extra fact were true, Defendant's hotel would still be a nuisance even though lawful guests stayed there. *See Fitzgerald*, 10 Ga. App. at 71.

14

defeat a nuisance claim—it is evidence of the very condition that made the property a public nuisance. The persons committing the crimes—including the hotel—*are the nuisance*. This only makes sense; a "lewd house" is only a lewd house because of what people do there. [3]

Defendant's argument would produce absurd results. Drugs, gambling and commercial sex are the hallmarks of public nuisance in cases going back more than a century. If Defendant's interpretation were correct, a house of commercial sex could never be a public nuisance because buyers of sex visited to buy sex. A gambling house could never be a public nuisance because illegal gamblers gambled there. A drug house could never be a public nuisance if buyers bought illegal drugs there. That is obviously not the law.[4] Georgia courts and federal courts within this

---

[3] In order to even make this argument, Defendant must necessarily admit that Plaintiff properly alleged a large number of men (*i.e.,* criminals) came to the hotel each day to buy women and minor girls for sex, including Plaintiff.

[4] *See, e.g., E.M.*, 2024 WL 4005218, at *6 (As to public nuisance, "There are . . . disputed facts about whether Defendant took preventative measures to stop sex trafficking at its hotel."); *I.R.*, 723 F. Supp. 3d at 1346 ("there is ample evidence from which a jury could find that Defendant fostered an environment that permitted sex trafficking, prostitution, and other criminal activity to repeatedly occur on its premises."); *Jane Doe v. Suresh & Durga, Inc.*, 20A83795-5, (State Ct. Dekalb Cnty., May 8, 2024) ("The evidence of record [shows] the sex trafficking, pimping, and prostitution that the then-adolescent Plaintiff was subjected to was common at the Motel. Defendant disclaims knowledge or awareness of such repeated conduct at the Motel before the incident. Other evidence, however, supports the inference that Defendant permitted the Motel to become a sanctuary of sex trafficking, pimping, prostitution, and the sexual exploitation of vulnerable individuals."); *Birdwell v. State*, 112 Ga. App. 836, 837, 146 S.E.2d 374 (1965) (""A charge of keeping and

15

district have repeatedly found nuisance claims sufficiently pleaded on similar facts

of rampant sex and attendant crimes at a hotel.[5]

---

maintaining a common, ill-governed and disorderly house to encourage idleness, gaming, drinking, or other misbehavior, may be shown by proof of repeated immoral acts of [prostitution or other unlawful sexual acts] committed therein with the knowledge and approval of defendant."); *Frazier v. State*, 93 Ga. App. 204, 206−07, 91 S.E.2d 85 (1956); *Martin v. State*, 62 Ga. App. 902, 904−05, 10 S.E.2d 254 (1940) (discussing common law disorderly houses generally); *Brindle*, 145 Ga. at 398 ("A lewd house is per se a "public nuisance.") (citing 4 BLACKSTONE at *168; JOYCE & JOYCE, § 12); *Fanning v. State*, 17 Ga. App. 316, 317, 86 S.E. 683 (1915) ("The specific kinds of disorderly houses which are regarded in law as nuisances per se are bawdy-houses and gaming-houses.") (quoting 14 CYCLOPEDIA, supra, at 484); *Cotton v. City of Atlanta*, 10 Ga. App. 397, 399, 73 S.E. 683 (1912)*; Fitzgerald v. State*, 10 Ga. App. 70, 71-72, 72 S.E. 541 (1911) ("Only one act of sexual intercourse was directly proved, and it was not shown that the defendant personally knew of this act. The house in question was operated by the accused as a restaurant and lodging house, or a cheaper form of hotel. The proof showed that some good people lodged there from time to time, and that some lewd women stayed there at periods of greater or less duration. The defendant and his son personally conducted the house and looked after the comfort of the guests."); *Thrower v. State*, 117 Ga. 753, 757, 45 S.E. 126 (1903) (discussing common law construction of statute prohibiting the keeping of a gaming house, a public nuisance); *Kessler v. State*, 119 Ga. 301, 303, 46 S.E. 408 (1904) (discussing common law lewd houses generally); *Clifton v. State*, 53 Ga. 241, 244 (1874) ("The words ""lewd house" import that it is a house given to the unlawful indulgence of lust, including fornication or adultery. A "lewd house" may properly be said to be a house in which fornication or adultery is practiced. Maintaining and keeping a lewd house is a distinct offense under the statute. So if a person shall maintain and keep any *other place*, as a booth or tent, for the practice of fornication or adultery, either by himself, herself, or others, such person would be guilty under the statute.").

[5] *E.g., B.W.*, 2025 WL 3557926, at *7–8; *Roseberry*, 815 F. Supp. 3d at 1335-37; *I.R.*, 723 F. Supp. 3d at 1345–46; *E.M.*, 2024 WL 4005218, at *5–8; *D.H.*, 689 F. Supp. 3d at 1311; *Suresh & Durga, Inc.*, 20A837955; *Martin*, 62 Ga. App. at 904–05; *Brindle*, 145 Ga. at 398; *Fanning*, 17 Ga. App. at 317; *see also, e.g., Birdwell*, 112 Ga. App. at 837 (1965) (lewd house); *Frazier*, 93 Ga. App. at 206–07 (same);

From the facts alleged, Plaintiff has more than adequately pleaded a public nuisance, its injurious effects on all who came within its sphere of operation, and its blighting effect on the surrounding community.

## CONCLUSION

Defendant's motion should be denied. Alternatively, should the Court grant Defendant's motion in whole or in part, the Court should allow Plaintiff to amend her complaint before dismissing her claim.

Respectfully submitted on July 29, 2026.

ANDERSEN, TATE & CARR, P.C.

*/s/ Jennifer M. Webster*
PATRICK J. MCDONOUGH
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
JONATHAN S. TONGE
Georgia Bar No. 303999
jtonge@atclawfirm.com
JENNIFER M. WEBSTER
Georgia Bar No. 760381
jwebster@atclawfirm.com

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 822-9680 | Facsimile

---

*Fitzgerald*, 10 Ga. App. at 71-72 (same); *Kessler*, 119 Ga. at 303 (same); *Clifton*, 53 Ga. at 244 (same).

17

## CERTIFICATE OF COMPLIANCE

Under Local Rules 5.1(C) and 7.1(D), I hereby certify that the foregoing filing complies with the applicable font type and size requirements and is formatted in Times New Roman, 14-point font.

ANDERSEN, TATE & CARR, P.C.

*/s/ Jennifer M. Webster*
PATRICK J. MCDONOUGH
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
JONATHAN S. TONGE
Georgia Bar No. 303999
jtonge@atclawfirm.com
JENNIFER M. WEBSTER
Georgia Bar No. 760381
jwebster@atclawfirm.com

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 822-9680 | Facsimile